UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- x

THE CITY OF NEW YORK,

                                        Plaintiff,                    Civil Action No. _

                    -against-

HARMEET SINGH, ABRAHAM HANUKA and JOSEPH
HANUKA,

                                        Defendants.

--------------------------------------------------------------------- x

    Plaintiff the City of New York, by its counsel, James E. Johnson, Corporation Counsel of

the City of New York, as and for its complaint against the defendants, respectfully alleges, with

knowledge of its own actions and on information and belief as to the actions of others:

    1.    This action arises out of a scheme by defendants Harmeet Singh ("Singh") and

Joseph and Abraham Hanuka ("Hanuka") to traffic "untaxed" cigarettes into New York.[1]

    2.    The $43.50 per carton cigarette excise tax levied on cigarettes legally sold in New

York gives rise to a higher retail cigarette price in New York than in, for example, Virginia,

where the cigarette tax is $6 per carton. Cigarette smugglers reap enormous, illegal profits by

trafficking far cheaper Virginia-taxed cigarettes into New York, where the cigarettes can be

profitably sold at prices well-below the New York market price but well-above the Virginia

---

[1] "Untaxed" cigarettes are those on which New York cigarette excise taxes should have been, but were not, pre-paid because the cigarettes were introduced into New York commerce by means that evade the cigarette distribution system mandated by New York law.  As explained more fully below, taxes on cigarettes intended for trafficking commonly are paid in the state in which cigarettes are first purchased, but not in the state into which the cigarettes are to be trafficked, where they are "untaxed," or more precisely, "undertaxed."  *See City of N.Y. v. Hatu*, 2019 U.S. Dist. LEXIS 91576, at *5 n.2 (S.D.N.Y. May 31, 2019) ("Because these cigarettes were taxed in North Carolina, but do not bear authentic New York tax stamps, the Court uses the more precise term "under-taxed cigarettes.").

Untaxed cigarettes are synonymously referred to as "unstamped" cigarettes because the New York tax stamps purchased pursuant to the state-mandated distribution scheme and evidencing the payment of New York taxes, are not affixed. The packages instead bear stamps of the state in which the cigarettes were purchased.

purchase price. The scheme is not of recent vintage. See *United States v. Di Maria*, 727 F.2d 265 (2d Cir. 1984) ("'Bootleg cigarettes' are those purchased in a low-tax state, *e.g.*, North Carolina, and then transported to a high-tax state, *e.g.*, New York.").

3.      The City received information from the Virginia Attorney General's Office Tobacco Enforcement Unit that City Mart, a convenience store located at 1001 Forbes St, Stafford, VA 22405, sells on the order of 3000-4000 cartons of cigarettes every month, an amount far in excess of the volume to be expected by a store of City Mart's size and location. Investigators have also observed money counters and bags containing large amounts of cash in the store, both of which are indicia of cigarette trafficking well-known to law enforcement.

4.      Officers from the Stafford County Virginia Sheriffs Office ("SCSO") for several weeks observed New York resident Joseph Hanuka making weekly purchases of out-sized quantities of cigarettes, and loading them with the assistance of City Mart owner Harmeet Singh into a New York-plated vehicle owned by Abraham Hanuka.

5.      Subsequent to those purchases, law enforcement officers have tracked Joseph Hanuka to his residence in New York City, from where Hanuka presumably sells the cigarettes to others, consistent with the cigarette trafficking practices described above.

6.      By transporting, receiving, possessing, distributing and selling cigarettes not affixed with New York tax stamps in New York City and State, Singh, Joseph Hanuka and Abraham Hanuka engage in transactions with contraband cigarettes as defined by the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 et seq. (CCTA).[2]

---

[2] Cigarettes found in New York that do not bear New York tax stamps are "contraband" cigarettes as defined by the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 *et seq.*, regardless of whether the cigarettes bear a tax stamp of another jurisdiction.

7.     In associating with one another to commit predicate acts of cigarette trafficking, Singh, Joseph Hanuka and Abraham Hanuka comprise a racketeering enterprise as defined by the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (RICO).

8.     New York Public Health L. 1399-*ll*  ("PHL §1399-*ll*")  prohibits any person in the business of selling cigarettes from delivering cigarettes to any person other than certain persons authorized under the statute, such as those licensed to deal in cigarettes, or government employees or proprietors of customs bonded warehouses.  Neither Abraham Hanuka nor Joseph Hanuka is an authorized recipient of cigarettes under PHL § 1399-*ll*.

9.     The violations of the law described above injure the public health and the fiscal interests of New York City, entitling the City to an order; i) enjoining the defendants from shipping, transporting, receiving, possessing, distributing and selling contraband cigarettes in New York City and State in violation of the CCTA and RICO; and (ii) requiring the defendants jointly and severally to pay the City money damages under the CCTA equal to the amount of the New York City cigarette tax that should have been paid on each carton of cigarettes trafficked into New York City; (iii) awarding civil penalties under the CCTA; (iv) requiring the defendants, jointly and severally, to pay the City money damages equal to three times the amount of the damages awarded under the CCTA; (v) awarding civil penalties under PHL 1399-*ll*; and (vi) awarding attorney's fees provided for under the RICO statute.

## PARTIES

10.     Defendant Harmeet Singh ("Singh") is a resident of the State of Virginia, residing at 1016 Cottage Ln., Vienna, VA 22180. Singh is the owner of City Mart

11.     Defendant Abraham Hanuka is a resident of the State of New York, residing at 2296 E. 4th St., Brooklyn, NY.

12.     Defendant Joseph Hanuka is a resident of the State of New York, residing at 2296 E 4th St., Brooklyn, NY.

## BACKGROUND

### Cigarette Taxation and Regulation in New York

13.     The State and City of New York each impose a separate excise tax on cigarettes. With exceptions not relevant to this complaint, the tax applies to all cigarettes possessed for sale or use in New York City or State.[3] All cigarettes present in the State are presumed to be subject to the cigarette tax, unless and until the possessor of the cigarettes establishes the contrary. N.Y. Tax L. § 471, § 471-a; Administrative Code of the City of New York ("Ad. Code") § 11-1302.

14.     Each carton of cigarettes contains ten (10) packs of twenty (20) cigarettes.  At all times relevant to this complaint, the New York City excise tax has been $1.50 per pack or $15.00 per carton and the New York State excise tax has been $4.35 per pack or $43.50 per carton, for a total tax of $58.50 for cigarettes sold in the City.

15.     Every pack of cigarettes, either possessed for sale or "used" in New York State, with exceptions not relevant here, must be affixed with a New York State excise tax stamp, evidencing tax paid to the State of $4.35, or, if possessed for sale or "use" in New York City, affixed with a joint New York State/New York City tax stamp. N.Y. Tax L. § 471; 20 N.Y.C.R.R. § 76.1(a) (1); Ad. Code § 11-1302(g).

16.     State and City cigarette excise taxes, with exceptions not relevant here, are permissibly paid only by "cigarette stamping agents," usually wholesale cigarette dealers, licensed by the State and City of New York to purchase and then affix tax stamps to the cigarettes they sell at wholesale.  The price of the tax stamp purchased and affixed by the

---

[3] The "use" of cigarettes in the State or City is "any exercise of a right or power, actual or constructive, including but not limited to receipt, storage or any keeping or retention for any length of time."  New York Tax Law § 471-a, Ad. Code § 11-1301(4).

stamping agent is approximately equal to the amount of the tax due on the cigarettes.  The tax is thus paid by the stamping agent's purchase from the State and the City of a cigarette tax stamp, which is affixed to every package of cigarettes possessed by the agent for sale in the State and/or City.  The affixed stamp serves as proof that the tax has been paid. N.Y. Tax L. § 471; 20 N.Y.C.R.R. § 76.1(a) (1); Ad. Code § 11-1302(e).

17.    New York State mandates that stamping agents serve as the only entry point for cigarettes into New York's stream of commerce. With exceptions not relevant here, no other person other than a stamping agent is liable for or authorized to pay the cigarette tax. The stamping agent must incorporate the amount of the tax into the price of the cigarettes, thereby passing the tax burden (not the tax itself) to each subsequent purchaser of the cigarettes in the distribution chain, and ultimately to the consumer, as required under N.Y. Tax L. § 471 and Ad. Code Ad. Code § 11-1302(e) and (h).

18.    Neither Singh, Abraham Hanuka nor Joseph Hanuka is a New York-licensed stamping agent.

**Cigarette Tax Avoidance Schemes**

19.    State and local governments set the amount of cigarette taxes imposed in their jurisdictions independently of one another, giving rise to significant differences in cigarette prices among taxing jurisdictions. Because the tax is added to the manufacturer's base price paid by a wholesaler, wholesalers in jurisdictions imposing low cigarette taxes are able profitably to sell cigarettes at far lower prices than wholesalers selling in jurisdictions imposing higher cigarette taxes.

20.    The price differences created by interstate tax differences give rise to schemes to evade cigarette taxes in which cigarette traffickers earn substantial profits by exploiting the

"cross-border" market. Traffickers purchase at the low prices available in low-tax jurisdictions and sell the cigarettes in high-tax jurisdictions at higher, but still below-market prices. New York State and City cigarette taxes combine to form among the highest cigarette tax in the nation, making New York a prime target for cross-border cigarette trafficking.  Singh, Joseph Hanuka and Abraham Hanuka have engaged in such a cross-border scheme to obtain cheaper, Virginia-taxed cigarette for Joseph and Abraham Hanuka to sell in New York.

**Actions of the Defendants**

21.     In July 2020, detectives from the Stafford County Sheriff's Office learned of regular, weekly purchases of large quantities of cigarettes at City Mart by an individual driving a white Chrysler 300 van with New York license plates.

22.     Shortly thereafter, on August 2, 2020, officers from the Special Investigation Unit of the Stafford County Sheriff's Office arranged for surveillance at City Mart on the day of the week and at the time they had been informed that purchases were made by the individual driving the Chrysler van.

23.     At approximately 9:30 am on August 2nd, officers observed Singh arrive at City Mart, which was open and doing business before Singh's arrival.

24.     At approximately 10 am, officers observed a white Chrysler 300 van bearing NY license plate GTH8928 parked at the front door of City Mart. The Chrysler 300 is registered to Abraham Hanuka, residing at 2296 E 4th St., Brooklyn, NY.  Abraham Hanuka has a prior, Maryland arrest for cigarette trafficking.

25.     Officers then observed an individual later identified as Joseph Hanuka retrieve an unknown item from his vehicle's trunk, and, after entering the store, proceed to Singh's private office.  Thereafter, Hanuka exited the store seven (7) times, placing items into his vehicle.

Officers were able to observe the clerk at the store's interior counter and never observed Hanuka approach or pay for any of items at the counter.

26.     During each of the seven (7) trips in and out of the store, Hanuka appeared to be placing half cases of cigarettes (30 cartons each), *i.e*., approximately 200 cartons in total, into his vehicle.

27.     Hanuka's vehicle left City Mart at approxiamtey 10:26 am.   Stafford County Sheriff's officers followed the vehicle until Hanuka entered the entrance ramp for I-95.   Officers were able to observe a blanket covering large square shaped items in the rear seat.

28.     The license plate readers ("LPRs") for NY tag GTH8928 showed the Chrysler van to have passed the Delaware Memorial Bridge southbound early in the day and then passing northbound late in that day, at times consistent with travel directly between City Mart and the Delaware Memorial Bridge.

29.     LPRs have further shown that Hanuka's white Chrysler with NY tag GTH8928 has crossed southbound at the Delaware Memorial Bridge every Sunday since May 10, 2020, between 6am and 7am.   LPR's also showed the white Chrysler crossing back across the Delaware Memorial Bridge northbound every Sunday since May 10, 2020, between 1- 2:30 pm.

30.     On August 9, 2020, SCSO officers established surveillance at City Mart. At approximately 11:17 am, officers observed City Mart owner Singh exit a Toyota Highlander registered to him in Virginia and enter the store.

31.     At 11:24, SCSO officer observed the same white Chrysler 300s, NY license plate GTH8928 as had been observed on August 2nd arrive at the City Mart parking lot and back in close to the front doors of the store.   Hanuka exited the vehicle, removed a zippered bag and a smaller black plastic bag from the trunk of the van and entered City Mart.

32.     An SCSO officer entered the store and observed Singh and Hanuka inside a private office.

33.     Hanuka shortly thereafter exited and re-entered the store seven (7) times, without ever having approached the clerk working at the check-out counter. Each time, Hanuka carried black trash bags containing what appeared to be half cases of cigarettes and three medium/ large style zippered bags, all of which were placed into the Chrysler 300 van.  SCSO officers estimate from observing Hanuka that he purchased approximately 240 cartons of cigarettes.

34.     Hanuka covered the trash bags with a blanket and left City Mart at 11:48pm, entering I-95 North at Exit 136.

35.     LPR's showed Hanuka's vehicle to have crossed the Delaware Memorial Bridge into New Jersey at approximately round 2:46 pm on August 9, 2020, consistent with having driven non-stop from City Mart. The same LPRs had shown Hanuka's vehicle to have passed that location, going southbound, at 8:11 am on August 9, 2010.

36.     On August 16, 2020, SCSO established surveillance at City Mart. At 10:58 am, Singh arrived at the store. At 11:12 am, Hanuka arrived and backed into a spot directly adjacent to the front doors of City Mart.  Carrying bags removed from the trunk of his vehicle, Hanuka entered the store, passed the cashier, and went directly into Singh's private office.

37.     Hanuka entered and exited the store four times carrying black trash bags that appeared to contain half cases of cigarettes. Hanuka also carried a large black and gold zipper bag. He placed the estimated 200 cartons of cigarettes into the back seat of his vehicle, covered the items with a blanket and left, heading north on Route 1, entering I-95 North at Exit 136.

38.     At approximately 4:41 pm, officers from the New York City Sheriff's Office ("NYCSO") observed Hanuka's vehicle entering Staten Island.  Hanuka arrived at the Brooklyn

address to which the vehicle is registered and, with an individual he met there, carried three half cases of cigarettes into the home.

39.     On August 23, 2020 SCSO officers again established surveillance at City Mart. At approximately 10:11 am, Singh arrived and brought four (4) half cases of cigarettes from his vehicle into the store. Hanuka arrived at 10:32 am and backed into a space in front of the front door.  Hanuka then carried several black bags into the store, going directly to Singh's private office.

40.     An SCSO officer entered the store and confirmed that Hanuka was in Singh's office.  Without stopping at the cashier to pay for any items, Hanuka entered and exited the store six (6) times carrying black trash bags containing half cases of cigarettes, as well as several zippered bags, all of which he placed in his vehicle. At this time, Singh also exited the store carrying a black trash bag containing a half case of cigarettes and placed the bag into Hanuka's vehicle.

41.     Hanuka left City Mart, stopped for gas at approximately 10:59 am, and then drove north on Route 1 to enter I-95 Northbound at Exit 136.

42.     Later that day, officers from the NYCSO observed Hanuka arriving at 2296 E. 4th St., Brooklyn, NY and unloading half cases of cigarettes and black trash bags containing an estimated 240-250 cartons of cigarettes , which were transferred into the house.

43.     On August 30, SCSO officers established surveillance at City Mart.  At approximately 10:31 am, Singh arrived at the store.

44.     At 10:41 Hanuka pulled into the City Mart parking lot, backing in near the front door.  After retrieving several black bags and entering the store, Hanukah entered and exited the

store seven (7) times carrying a zippered bag and black trash bags containing half cases of cigarettes, which he placed into his vehicle.

45.     Hanukah departed the store after having purchased an estimated 200 cartons of cigarettes.  He traveled to and entered I-95 North. LPR's show him crossing the Delaware Memorial Bridge at 2:47pm.

46.     On September 13, 2020 members SCSO officers established surveillance at City Mart.  At approximately 10:08 am, Singh arrived at the store.  At 10:34 am, Hanuka pulled into the City Mart parking lot, backing in to a space in front of the store's front door. Hanuka exited his vehicle, retrieved several black bags from the trunk and entered the store.  Hanuka then entered and exited the store six (6) times carrying black trash bags and a zippered bag containing in total an estimated 200 cartons of cigarettes in half cases, all placed into his vehicle.

47.     Hanuka left the store, and was last observed entering I-95 North. LPR's showed his vehicle crossing the Delaware Memorial Bridge at 2:12pm.

48.     City Mart is a small non-franchised convenience store which sells items such as beer, cigarettes, lottery tickets, soft drinks and miscellaneous food products.  Most of the store traffic appears to be individuals purchasing sodas, beer, single packs of cigarettes, lottery tickets, or playing the store's two slot machines.

49.     The Virginia State Corporate Commission database shows City Mart to have one employee and annual sales of $29,735.00 as of June 26, 2020.

50.     Investigations have determined that Harmeet has deposited more than $3.1 million in cash into his business account (City Mart/Harmeet Singh) at the Community Bank of the Chesapeake, located at 425 Williams St Fredericksburg, VA, in the past year. The cash deposit range from $12,000 to $62,000, on a nearly daily basis.

**Allegations Related To Violation of The CCTA**

51.     The CCTA, 18 U.S.C. §§ 2341-2346, makes it a felony punishable by up to five years' imprisonment for any person, with certain exceptions detailed below, to ship, transport, receive, possess, sell, distribute or purchase "contraband cigarettes," defined as more than 10,000 cigarettes that bear no evidence of the payment of applicable cigarette taxes in the State or locality in which the cigarettes are found, if that jurisdiction requires stamps to be placed on packages or other containers of cigarettes to evidence tax payments. 18 U.S.C. §§ 2341(2); 2342.

52.     New York City and State each impose an excise tax on cigarettes possessed for sale or use in the City and State.  The two jurisdictions require the use of a joint City-State tax stamp to evidence the payment of cigarette taxes. N.Y. Tax L. §§ 471, 471-a; Ad. Code § 11-1302.

53.     None of the cigarettes shipped, transported, received, possessed, sold, distributed or purchased by Singh, Abraham Hanuka and Joseph Hanuka were affixed with the joint New York State/New York City tax stamps.  Nor could they have been; only licensed New York "stamping agents" are permitted to affix tax stamps.

54.     None of the cigarettes shipped, transported, received, possessed, sold, distributed or purchased by Singh, Abraham Hanuka and Joseph Hanuka were delivered to a New York-licensed stamping agent.

55.     The cigarettes shipped, transported, received, possessed, sold, distributed or purchased by Singh, Abraham Hanuka and Joseph Hanuka are contraband cigarettes within the meaning of the CCTA because (i) there is a State and a City cigarette tax applicable to the cigarettes; (ii) New York State and City both require a stamp to be placed on packages

of cigarettes to evidence payment of cigarette taxes; (iii) Singh, Abraham Hanuka and Joseph Hanuka shipped, transported, received, possessed, sold, distributed or purchased more than 10,000 cigarettes found within the State and the City without such tax stamps; and (iv) Singh, Abraham Hanuka and Joseph Hanuka are not persons entitled pursuant to 18 U.S.C. § 2341(2) to possess unstamped cigarettes.

56.     Singh, Abraham Hanuka and Joseph Hanuka had actual knowledge that the cigarettes that they shipped, transported, received, possessed, sold, distributed or purchased, which far exceeded 10,000 cigarettes, were transported to New York City and State for sale and distribution without tax stamps affixed and without payment of applicable cigarette taxes.

## ALLEGATIONS RELATED TO RICO

57.     Singh, Abraham Hanuka and Joseph Hanuka are each a member of an association-in-fact enterprise referred to herein as the SHH Enterprise. The SHH Enterprise engages in the shipment, transport, receipt, possession, sale, distribution or purchase of contraband cigarettes by purchasing Virginia-taxed cigarettes in Virginia, and distributing them in New York to generate illicit profits by evading New York's mandatory cigarette distribution system.

58.     At all times relevant to this Complaint, the SHH Enterprise has been an "enterprise" within the meaning of 18 U.S.C. § 1961(4).  The SHH Enterprise engages in, and its activities affect, interstate commerce. The SHH Enterprise constitutes an ongoing organization whose members function as a continuing unit for the common purpose of achieving the objectives of the Enterprise, which included earning money by distributing Virginia-taxed cigarettes in New York.

59.     The RICO statute, 18 U.S.C. § 1961 *et seq.*, makes it unlawful for any person employed by or associated with any enterprise engaged in or affecting interstate commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity.

60.     "Racketeering activity" includes any act indictable under 18 U.S.C. § 2341 *et seq.*, *i.e.*, trafficking in contraband cigarettes in violation of the CCTA.  *See* 18 U.S.C. § 1961(1).   A CCTA violation is a RICO "predicate offense." Violation of the CCTA constitutes "racketeering activity" within the meaning of the RICO statute.

### The Purposes, Methods and Means of the Enterprise

61.     The principal purpose of the SHH Enterprise is to generate money for its members by engaging in the shipment, transport, receipt, possession, sale, distribution or purchase of contraband cigarettes. Singh, Abraham Hanuka and Joseph Hanuka, as members or associates of the SHH Enterprise, sought to and did participate in achieving the purpose of the Enterprise through various legal and illegal activities, principally involving transactions with contraband cigarettes.

62.     Singh, Abraham Hanuka and Joseph Hanuka participate in the affairs of the SHH Enterprise by purchasing Virginia-taxed cigarettes in Virginia and then transporting, selling, and distributing them in New York without affixing New York tax stamps.

63.     Singh, Abraham Hanuka and Joseph Hanuka engage in transactions with tax-paid Virginia cigarettes with the knowledge that the cigarettes will be transported into New York for subsequent distribution and sale in New York.

64.     At all times relevant to this Complaint, Singh, Abraham Hanuka and Joseph Hanuka participated in the conduct of the affairs of the SHH Enterprise by shipping,

transporting, receiving, possessing, selling, distributing or purchasing contraband cigarettes in or into New York City and State, or arranging therefor.

65.     At all times relevant to this Complaint,  Singh, Abraham Hanuka and Joseph Hanuka conducted the affairs of the SHH Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1)(B), consisting principally of multiple and continuing instances of contraband cigarette trafficking in violation of 18 U.S.C. § 2341 *et seq.*

66.     Singh received orders for cigarettes from Abraham Hanuka and Joseph Hanuka and filled those orders by accepting cash payments, knowing that the cigarettes would be and in fact were immediately transported out of Virginia without being affixed with the tax stamps of any state. Joseph Hanuka transported those cigarettes into New York without affixed New York tax stamps, knowing and intending the cigarettes would be delivered to Abraham Hanuka for subsequent sale without affixed New York tax stamps. Singh took steps to permit the Enterprise to succeed in earning money through the distribution of contraband cigarettes.

67.     Abraham Hanuka and Joseph Hanuka made cash purchases of Virginia-taxed cigarettes using their pooled funds, and Abraham Hanuka instructed Joseph Hanuka to transport the cigarettes from Virginia to New York, where the cigarettes were to be sold. Abraham Hanuka knew that the cigarettes purchased by Joseph Hanuka in Virginia would not be affixed with New York tax stamps, and that the cigarettes would be sold in New York without New York tax stamps. Singh, Abraham Hanuka and Joseph Hanuka each took steps to permit the SHH Enterprise to succeed in earning money through the distribution of contraband cigarettes.

**Racketeering Acts**

68.     At all times relevant to this Complaint,  Singh, Abraham Hanuka and Joseph Hanuka knowingly and intentionally shipped, transported, received, possessed, sold, distributed or purchased contraband cigarettes namely, more than 10,000 cigarettes lacking joint New York State/New York City tax stamps, in violation of the CCTA, 18 U.S.C. § 2341 *et seq.*  Each transaction or aggregate of transactions involving more than 10,000 cigarettes constitutes a separate violation of the CCTA and hence an act of racketeering as defined by the RICO statute.  Singh, Abraham Hanuka and Joseph Hanuka each committed more than two racketeering acts during the ten years preceding the filing of this Complaint.

69.     The foregoing racketeering acts constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961, in that they consist of two or more acts of racketeering activity having a common purpose within a ten-year period.

**Roles of Singh, Abraham Hanuka and Joseph Hanuka**

70.     At all times relevant to this Complaint, Singh, Abraham Hanuka and Joseph Hanuka participated in the management and operation of the SHH Enterprise by, among other things:

a.  Engaging in the long-term planning and day-to-day activities required to ship, transport, receive, possess, sell, distribute or purchase cigarettes that Singh, Abraham Hanuka and Joseph Hanuka knew would be transported out of Virginia but not affixed with the tax stamps of any state;

b.  Arranging to ship, transport, receive, possess, sell, distribute or purchase cigarettes that Singh, Abraham Hanuka and Joseph Hanuka knew would be transported out of Virginia but not affixed with the tax stamps of any state;

c.  Selling cigarettes in New York knowing and intending that the cigarettes would be sold in New York while not affixed with New York tax stamps.

d.  Placing orders for Virginia-taxed cigarettes with the knowledge that the cigarettes would be transported out of Virginia while not affixed with the tax stamp of any state and then sold in New York without being affixed with New York tax stamps.

e.  Employing and instructing other individuals to engage in all of the above activities.

## Allegations Related To Conspiracy To Violate Rico

71.  At all times relevant to this Complaint, Singh, Abraham Hanuka and Joseph Hanuka conspired among themselves to violate the provisions of 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d), by agreeing to further endeavors of the SHH Enterprise that, when completed, constituted contraband cigarette trafficking, in violation of the CCTA, 18 U.S.C. § 2341 *et seq*.

72.  At all times relevant to this Complaint, Singh, Abraham Hanuka and Joseph Hanuka agreed to a plan whereby Singh would sell, and Abraham Hanuka and Joseph Hanuka would purchase Virginia-taxed cigarettes. Singh and the Hanuka's agreed that the cigarettes would be transported to New York without New York tax stamps having been affixed, and would be sold at profitable below-market prices made possible because New York tax stamps had not been purchased to affix on the cigarettes.

73.  At all times relevant to this Complaint, Singh, Abraham Hanuka and Joseph Hanuka agreed to a plan whereby Abraham Hanuka and Joseph Hanuka would arrange for Singh to sell them Virginia-taxed cigarettes in Virginia, Joseph Hanuka would travel to Virginia and purchase the cigarettes for cash, and Abraham Hanuka would provide his vehicle to transport and the cash to purchase cigarettes that would be sold in New York.

74.  Singh, Abraham Hanuka and Joseph Hanuka each recognized that an essential element of the plan consisted of multiple violations of the CCTA, 18 U.S.C. §

2341 *et seq*. Singh, Abraham Hanuka and Joseph Hanuka agreed that certain members of the SHH Enterprise would commit CCTA violations while other Enterprise members would engage in conduct intended to support and facilitate those violations of the CCTA.

75. At all times relevant to this Complaint, Singh, Abraham Hanuka and Joseph Hanuka formed the SHH Enterprise, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, and then knowingly and intentionally conspired to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the SHH Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. §§ 1961(1), (5).

76. The pattern of racketeering activity through which Singh, Abraham Hanuka and Joseph Hanuka agreed to conduct the affairs of the SHH Enterprise consisted of acts of contraband cigarette trafficking into New York City. Singh, Abraham Hanuka and Joseph Hanuka each agreed that some conspirators would commit at least two acts of racketeering in conducting the affairs of the SHH Enterprise and other conspirators would assist in those acts.

### Allegations Related To The Violation of PHL § 1399-*ll*

77. On numerous occasions from May to September 2020, at least, Singh sold cigarettes to Abraham Hanuka and Joseph Hanuka and shipped the cigarettes to New York, where they were delivered to Abraham Hanuka, who is not authorized under PHL §1399-*ll* to receive cigarette deliveries.

### FIRST CLAIM FOR RELIEF

### (Violation of the Contraband Cigarette Trafficking Act)

78. The City realleges paragraphs 1-77 above as if fully set forth herein.

79.     Pursuant to the CCTA, 18 U.S.C. § 2346, the City, as a local government, is empowered to bring an action in federal district court to prevent and restrain violations of the CCTA, and to obtain any other appropriate form of relief from CCTA violations, including civil penalties, equitable remedies, and damages.

80.     At all times relevant to this Complaint, Singh, Joseph Hanuka and Abraham Hanuka knowingly shipped, transported, sold and/or distributed contraband cigarettes within the meaning of 18 U.S.C. § 2341(2), in that Singh, Abraham Hanuka and Joseph Hanuka each engaged in such conduct with more than 10,000 cigarettes that were not affixed with a joint New York State/New York City tax stamp..

81.     As a direct result of the foregoing violations of the CCTA by Singh, Abraham Hanuka and Joseph Hanuka, the City has suffered damages.

82.     Singh, Abraham Hanuka and Joseph Hanuka will continue to violate the CCTA unless enjoined.

<u>**SECOND CLAIM FOR RELIEF**</u>

**(Violation of 18 U.S.C. § 1962(c))**

83.     The City realleges paragraphs 1-82 as if fully set forth herein.

84.     New York City is a "person" as defined in 18 U.S.C. § 1961(3).

85.     Singh, Abraham Hanuka and Joseph Hanuka are each a "person" as defined in 18 U.S.C. § 1961(3) and as used in 18 U.S.C. § 1962(c).

86.     The SHH Enterprise is an "enterprise" as defined in 18 U.S.C. § 1961(4) and as used in 18 U.S.C. §§ 1962(c).  The SHH Enterprise engages in activities affecting interstate commerce and has done so at all times relevant to this Complaint.

87.     Singh, Abraham Hanuka and Joseph Hanuka is each associated with the SHH Enterprise. Singh, Abraham Hanuka and Joseph Hanuka each conducts or participates in

the management and operation of the affairs of the SHH Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) (B), 1961(5) and 1962(c), namely, multiple and repeated acts of contraband cigarette trafficking, in violation of 18 U.S.C. §§ 2341 et seq.

88.       The acts of contraband cigarette trafficking engaged in by Singh, Abraham Hanuka and Joseph Hanuka constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), because the acts are related to one another and are continuous.  The acts are connected to one another as part of a plan to accomplish a uniform purpose, which is the making of money from the receipt, sale, possession, and distribution of contraband cigarettes.  The repeated nature of the conduct and the threat of similar conduct occurring in the future make the acts continuous.

89.       New York City has suffered injury to its business or property within the meaning of 18 U.S.C. § 1964(c) by reason of the violation of 18 U.S.C. § 1962(c) by Singh, Abraham Hanuka and Joseph Hanuka.

### THIRD CLAIM FOR RELIEF

### (Violation of 18 U.S.C. § 1962(d))

90.       The City realleges paragraphs 1-89 as if fully set forth herein.

91.       New York City is a "person" as defined in 18 U.S.C. § 1961(3).

92.       Singh, Abraham Hanuka and Joseph Hanuka is each a "person" as defined in 18 U.S.C. § 1961(3) and as used in 18 U.S.C. § 1962(d).

93.       The SHH Enterprise is an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). The SHH Enterprise engages in and its activities have an effect on interstate commerce.

94.      Singh, Abraham Hanuka and Joseph Hanuka conspired with one another to violate 18 U.S.C. § 1962(c) in that they agreed among themselves to conduct the affairs of the SHH Enterprise through acts that, when completed, would satisfy all of the elements of a predicate offense, to wit, contraband cigarette trafficking, in violation of the CCTA, 18 U.S.C. §§ 2341 et seq.

95.      With knowledge that the SHH Enterprise engaged in multiple and repeated acts of contraband cigarette trafficking in violation of the CCTA, 18 U.S.C. §§ 2341, et seq., Singh, Abraham Hanuka and Joseph Hanuka each agreed among themselves that the affairs of the SHH Enterprise would be conducted in a manner that would facilitate cigarette trafficking and lead to the success of the scheme to traffic contraband cigarettes into New York.

96.      The scheme to traffic contraband cigarettes into New York City constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).  The predicate acts are both related and continuous.  The acts are connected to one another as part of a scheme to accomplish a uniform purpose, which is the profiting from the sale of contraband cigarettes in New York City.  The repeated nature of the conduct during the period of the scheme and the threat of similar conduct occurring in the future make the acts continuous.

97.      New York City has suffered injury to its business or property within the meaning of 18 U.S.C. § 1964(c) by reason of each of Singh's, Abraham Hanuka's and Joseph Hanuka's violation of 18 U.S.C. § 1962(d).

## FOURTH CLAIM FOR RELIEF

### (Singh: Violation of N.Y. PHL § 1399-*ll*)

98.      The City realleges paragraphs 1-97 as if fully set forth herein.

99.     N.Y. PHL § 1399-*ll* provides that "It shall be unlawful for any person engaged in the business of selling cigarettes to ship or cause to be shipped any cigarettes to any person in this state who is not licensed or otherwise authorized to deal in cigarettes." PHL§ 1399-*ll*.

100.     Abraham Hanuka and Joseph Hanuka are not licensed to deal in cigarettes, and not persons authorized by PHL § 1399-*ll* to receive cigarette deliveries.

101.     Singh shipped or caused to be shipped cigarette to Abraham Hanuka in New York on dozens of occasions.

102.     PHL § 1399-*ll* provides that the City may recover civil penalties in the amounts provided for in the statute for cigarettes being transported in violation of that section.

**WHEREFORE**, New York City respectfully prays that the Court grant judgment against defendants as follows:

a.  On the First Claim For Relief, pursuant to the CCTA, requiring Singh, Abraham Hanuka and Joseph Hanuka jointly and severally (i) to pay the City money damages in an amount equal to the City tax imposed on the cigarettes they transported into the City in violation of the CCTA, 18 U.S.C. § 2341 *et seq.*; (ii) to pay the City civil penalties available under the CCTA and (iii) permanently enjoining Singh, Abraham Hanuka and Joseph Hanuka from violating the CCTA, 18 U.S.C. § 2341 *et seq.* by shipping, transporting, receiving, possessing, selling, distributing or purchasing contraband cigarettes in or into New York;

b.  On the Second Claim For Relief, pursuant to RICO, 18 U.S.C. § 1962(c) *et seq.*, requiring Singh, Abraham Hanuka and Joseph Hanuka, jointly and severally, to pay the City money damages in an amount equal to three times the City tax imposed on the cigarettes transported into the City by Singh, Abraham Hanuka and Joseph Hanuka in violation of RICO, and attorney's fees;

c.  On the Third Claim For Relief, pursuant to RICO, 18 U.S.C. § 1962(d), requiring Singh, Abraham Hanuka and Joseph Hanuka, jointly and severally, to pay the City money damages in an amount equal to three times the City tax imposed on the cigarettes transported into the City by Singh, Abraham Hanuka and Joseph Hanuka, and attorney's fees;

d.  On the Fourth Claim For Relief, pursuant to PHL § 1399-*ll*, requiring Singh to pay the City a penalty in the amount of $100 for each pack of cigarettes transported in violation of that statute; and,

e.  Awarding such other and further relief as the Court may deem appropriate.

Dated: New York, New York
October 14, 2020

**JAMES E. JOHNSON**
Corporation Counsel of the
  City of New York
Attorney for Plaintiff the City of New York
100 Church Street, Room 20-99
New York, New York 10007
(212) 356-2032; (917) 913-8523


By:      _____s/_____
           Eric Proshansky (EP 1777)
           Assistant Corporation Counsel